

Villanova University School of Law

Opinions of the United
States Court of Appeals
for the Third Circuit

5-31-2007

# USA v. Nunez-May

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4580

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Nunez-May" (2007). *2007 Decisions.* Paper 1053.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1053

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-4580

———

UNITED STATES OF AMERICA

v.

RAHISY NUNEZ-MAY,

Appellant

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 00-cr-00776-2)
District Judge: Honorable Harold A. Ackerman

—————

Submitted under Third Circuit LAR 34.1(a)

May 11, 2007

Before: RENDELL, JORDAN and ALDISERT, <u>Circuit Judges</u>.

(Filed May 31, 2007)

—————————

OPINION OF THE COURT

—————————

ALDISERT, <u>Circuit Judge</u>.

On June 26, 2001, Rahisy Nunez-May pleaded guilty to conspiracy to commit food stamp fraud, in violation of 18 U.S.C. § 371.  The District Court for the District of New Jersey sentenced Nunez-May to 21 months of imprisonment and three years of supervised release.  The District Court also imposed $370,716 in restitution.  Nunez-May now appeals her punishment.  She contends that the District Court: (1) erred by imposing a two-level increase for obstruction of justice, (2) incorrectly declined to award a two-level reduction for acceptance of responsibility, (3) miscalculated the loss total, and (4) failed to properly consider the 18 U.S.C. § 3553(a) factors at sentencing.  We conclude that Appellant's arguments lack merit and, accordingly, we will affirm the judgment of the District Court.

**I.**

The parties are familiar with the facts and proceedings, so we will only briefly revisit them here.  In 1998, Rahisy Nunez-May emigrated from the Dominican Republic and found a job working as a cashier in a Newark grocery store.  Unfortunately for the Appellant, she quickly found herself in the middle of a scheme intended to defraud the United States government.  Under the direction of her employer, Nunez-May and three other cashiers made illegal cash distributions in exchange for their customers' food stamp vouchers.  The Appellant and her co-conspirators exacted a hefty fee for each of these fraudulent transactions.  For example, on February 5, 1999, Nunez-May swapped $70 cash and $7.38 in groceries for $107.38 in redeemable food stamp benefits.  After a lengthy investigation by the Department of Agriculture, the Government estimated that

2

the fraud cost taxpayers approximately $1,482,864 during a 16-month period.

On June 26, 2001, Nunez-May pleaded guilty to a one-count indictment of conspiracy to commit food stamp fraud. As part of her guilty plea, Nunez-May stipulated that the offense resulted in a criminal loss foreseeable to the Defendant of more than $350,000, but less than $500,000. The District Court accepted Nunez-May's guilty plea and released her without bond, pending sentencing. The Court, however, required her to remain in Essex County, New Jersey.

The parties agree that Nunez-May did not live up to the terms of her pre-sentencing release. In December of 2005, Nunez-May vacated her home in New Jersey and traveled to the Dominican Republic using a fraudulent passport. The District Court issued an absconder's warrant for her arrest on January 31, 2006. Two weeks later, United States Marshals located Nunez-May in the Dominican Republic and instructed her to return to the United States. Nunez-May then traveled to Puerto Rico where Marshals put her under arrest.[1]

At sentencing on the food stamp charge, the government argued that Nunez-May had obstructed justice by escaping the country—conduct that warranted a two-level increase to her base offense level. The government further contended that Nunez-May's actions barred her from claiming a two-level reduction for acceptance of responsibility.

---

[1] We also note that on September 24, 2004, Washington, D.C. police arrested her for prostitution under the alias "Mercedes Ortega." Not only did she fail to inform Pretrial Services that she had traveled outside Essex County, but she did not report she had been arrested.

3

Nunez-May responded that she did not "escape" the jurisdiction, but rather traveled on a mission of mercy. Specifically, she argued that she flew to the Dominican Republic to visit her ailing mother, who had suffered a stroke on December 5, 2005. Based on information contained in the Presentence Investigation Report, the District Judge rejected Nunez-May's arguments, concluding that "unauthorized travel outside of the United States for an extended period of time under a fraudulent alias" constitutes obstruction of justice. The District Court also found that the Appellant obstructed justice by providing materially false information to law enforcement. Based on these conclusions, the court set the total offense level at 16. This calculation exposed Nunez-May to a range of 21 to 27 months of incarceration under the advisory sentencing guidelines. On the issue of restitution, the District Judge determined that Nunez-May's criminal conduct caused a foreseeable loss of $370,716—well within the range stipulated by her plea agreement. Finally, after weighing the sentencing factors, the District Court imposed a sentence of 21 months of imprisonment. Nunez-May now appeals.[2]

## II.

At the heart of this appeal, Nunez-May contends that the District Court improperly calculated her Guidelines sentencing range.[3] She first argues that the District Court erred by imposing a two-level sentence enhancement for obstruction of justice. The Appellant

---

[2] We have jurisdiction to hear this appeal under 18 U.S.C. § 3742(a)(1).

[3] We exercise plenary review over a district court's legal interpretation of the Sentencing Guidelines, but our review of the factual findings supporting a district court's application of the Guidelines is only for clear error. See United States v. Siegel, 477 F.3d 87, 89-90 (3d Cir. 2007).

contends that her unauthorized trip to the Dominican Republic constitutes run-of-the-mill "unauthorized travel," not obstruction. We reject this argument.

A two-level sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1 is appropriate where the court finds that "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the . . . sentencing on the instant offense . . . ." U.S.S.G. § 3C1.1. Among the acts to which this Guideline is applicable is "escaping or attempting to escape from custody before trial or sentencing." U.S.S.G. § 3C1.1, cmt. n.4(e).

In this case, Nunez-May boldly gathered false identification documents as early as May of 2005, applied for and received a fraudulent passport, left the territorial jurisdiction of the United States, failed to inform pretrial services of her whereabouts, and showed no signs of returning to the United States until the U.S. Marshals intervened. From beginning to end, Nunez-May's acts were calculated to remove herself from supervision of the District Court and avoid detection by law enforcement officials. In the eyes of this Court, such conduct amounts to a very serious form of escape. See, e.g., United States v. Abuhouran, 162 F.3d 230, 234 (3d Cir. 1998) (holding that defendant's destruction of tracking bracelet and trip to airport constituted "a very serious obstruction of justice").

That Nunez-May's flight occurred while she was on pretrial release does not render her conduct any more appropriate. See, e.g., United States v. Draper, 996 F.2d 982 (9th Cir. 1993) (holding that escape from pretrial release constitutes obstruction of

5

justice); United States v. Defeo, 36 F.3d 272, 276-277 (2d Cir. 1994) (same); United States v. Shinder, 8 F.3d 633, 635 (8th Cir. 1993) (same); United States v. McCarthy, 961 F.2d 972, 979-980 (1st Cir. 1992) (same).

We also reject Nunez-May's argument that the penalty for obstruction only applies once a defendant misses a scheduled court date. Guidelines section 3C1.1 and its accompanying commentary indicate that a simple *attempt* to escape is sufficient to warrant the obstruction adjustment. See U.S.S.G. § 3C1.1, cmt. n.3(e); see also United States v. Keats, 937 F.2d 58, 67-68 (2d Cir. 1991) (affirming obstruction adjustment where evidence indicated that defendant was about to leave country prior to trial). Nunez-May's flight out of the country, which imposed costs on pretrial services and the U.S. Marshals, certainly qualifies as more than an attempt. Accordingly, we conclude that the District Court did not err in deciding to impose a two-level sentencing enhancement for obstruction of justice.

## III.

We next turn to Nunez-May's argument that she deserved a two-level sentencing reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). Section 3E1.1 provides for a reduction in offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for [her] offense."

Our analysis begins by noting that the Appellant must cross many bridges to put her argument on firm legal ground. Demonstrating acceptance of responsibility requires a genuine show of contrition, United States v. Muhammad, 146 F.3d 161, 168 (3d Cir.

6

1998), and the defendant bears the burden of establishing by a preponderance of the evidence that he is entitled to the reduction. See United States v. Rodriguez, 975 F.2d 999, 1008 (3d Cir. 1992). Moreover, under the precedent of this Court, a defendant who obstructs justice ordinarily may not claim to have accepted responsibility for his criminal conduct.[4] See U.S.S.G. § 3E1.1, cmt. n.4 ("Conduct resulting in an enhancement under § 3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct."); United States v. Batista, --- F.3d --- 2007 WL 1202693 at *4 (3d Cir. April 25, 2007).

The Sentencing Guidelines, however, make it clear that the a two-point increase for obstruction of justice does not, *per se*, doom an acceptance-of-responsibility motion. The law acknowledges that there "may . . . be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1, cmt. n.4. At sentencing, Nunez-May contended that hers is one of these "extraordinary cases" contemplated by the Guidelines. Under her theory of the case, an emergency visit to an ailing parent should not undermine a defendant's acceptance of responsibility.

The District Court considered this argument at length. It concluded that Nunez-May had shown some acceptance of responsibility by admitting her guilt and showing "a certain degree of cooperation with the Government in disclosing the workings of the

_____

[4] Whether a defendant clearly demonstrates acceptance of responsibility is "essentially factual" and is therefore reviewed for clear error only. United States v. Ortiz, 878 F.2d 125, 128 (3d Cir. 1989).

conspiracy." The District Court, nevertheless, determined that Nunez-May's case was not so extraordinary as to merit a reduction for acceptance of responsibility. The District Court based its conclusion on information contained in the Presentence Investigation Report ("PSR"). The PSR stated that Nunez-May, after entering her guilty plea, acquired numerous false identification documents and made further unauthorized trips to Antigua and Peru. See Rule 32(f), Federal Rules of Criminal Procedure;[5] Rule 32(1)(3)(A), Federal Rules of Criminal Procedure (a sentencing court may accept any undisputed portion of the PSR as a finding of fact); United States v. Campbell, 295 F.3d 398, 406 (3d Cir. 2002) (same). In light of the nature of Nunez-May's obstruction, her conduct during pre-trial release, and the principles underlying Application Note 4 to § 3E1.1, we determine that the District Court did not err by finding that she failed to accept responsibility for her actions.

## IV.

Nunez-May next argues that the District Court improperly concluded that her participation in the conspiracy caused a foreseeable loss of $370,716.[6] Because this amount exceeded $350,000, the District Judge enhanced her base offense level 9 points in

---

[5] Rule 32(f) provides that a party must communicate in writing to the probation officer "any objections . . . to material information . . . contained in or omitted from the report" within 14 days after receiving the Presentence Investigation Report. Here, Nunez-May first raised her objections to the PSR at the sentencing hearing.

[6] On appeal, we review loss determination for clear error. United States v. Brennan, 326 F.3d 176, 194 (3d Cir. 2003).

accordance with U.S. Sentencing Guidelines section 2F1.1(b)(1)(L).

The parties agree on the applicable legal framework; while loss must be established by a preponderance of the evidence, see United States v. Evans, 155 F.3d 245, 253 (3d Cir. 1998), the application notes to Sentencing Guidelines state that losses "need not be determined with precision." U.S.S.G. § 2F1.1 cmt. n.9. Courts may "make a reasonable estimate of the loss, given the available information." Id. Nunez-May complains that the District Court did not meet this standard. She contends that the District Judge only "guesstimated" the loss attributable to her actions.

We cannot agree. Our review of the proceedings indicates that the District Court was presented with a fully developed record as to the parties' competing calculations of the loss amount. The Government put forth that the Nunez-May's place of employment processed $2,085,133 worth of electronic food stamp debits from January 1, 1998 until May 5, 2000. Surveillance conducted by the Department of Agriculture revealed that approximately $1,482,864 of these were fraudulent transactions.[7] The Government then attributed one-fourth of the total loss ($370,716) to each of the four cashiers who participated in the conspiracy. In response to the Government's argument, Nunez-May argued for a loss calculation of $185,000.

The District Court's remarks at sentencing make patently clear that it rejected the

---

[7] This conclusion was well supported by a Department of Agriculture investigation, which found that cooperating witnesses had received 71 cents in cash for every food stamp dollar they offered the grocery store.

9

Appellant's proposed loss calculation and expressly adopted the government's reasoning. Based on these facts, we cannot say that the District Court's loss calculation was clearly erroneous.

## V.

Nunez-May's contention that her sentence is unreasonable also lacks merit. In United States v. Cooper we stated that there are two components to our reasonableness review: (1) an examination of the court's treatment of the relevant sentencing factors, and (2) a review of how the court applied the relevant factors to the facts of the case at hand. See United States v. Cooper, 437 F.3d 324, 329-330 (3d Cir. 2006). Although a sentencing court does not need to make explicit findings on each factor, it must be clear from the record that "it took the factors into account in sentencing." Id. at 329. The record must indicate that the sentencing court gave them meaningful consideration and that it addressed all arguments raised by the parties that rest upon "a ground of recognized legal merit (provided they have a factual basis)." Id. (quoting United States v. Cunningham, 429 F.3d 673, 679 (7th Cir. 2005)).

At the sentencing hearing, the District Court engaged in a lengthy discussion of the 18 U.S.C. § 3553(a) sentencing factors. Because of the Court's great thoroughness, we need not recount its entire discussion here. We note, however, that the District Court examined each factor in turn, and explained how the sentence would address that factor's purpose. We are satisfied that Nunez-May's sentence was not unreasonable.

\* \* \* \* \* \*

10

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. Accordingly, the judgment of the District Court will be affirmed.

———