

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-25-2007

# USA v. Batista

Precedential or Non-Precedential: Precedential

Docket No. 05-2949

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Batista" (2007). *2007 Decisions.* Paper 1155.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1155

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 05-2949

————

UNITED STATES OF AMERICA

v.

BRAULIO ANTONIO BATISTA,

Appellant

————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 03-cr-00514-1)
District Judge:  Honorable John C. Lifland

————

Submitted Under Third Circuit LAR 34.1(a)
March 30, 2007

Before:  FISHER, JORDAN and ROTH, *Circuit Judges*.

(Filed: April 25, 2007 )

George S. Leone
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ  07102

Glenn J. Moramarco
Office of United States Attorney
Camden Federal Building & Courthouse
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ  08101
        *Attorneys for Appellee*

Robert Little
515 Valley Street, Suite 170
Maplewood, NJ  07040
        *Attorney for Appellant*

---

OPINION OF THE COURT

---

FISHER, *Circuit Judge*.

This case presents a novel question regarding whether feigning mental illness is an appropriate basis for an obstruction of justice enhancement under the United States Sentencing Guidelines.  We hold that it is.

After pleading guilty to a charge of conspiracy to distribute 150 grams or more of crack cocaine, Braulio Antonio Batista was sentenced to a 188-month term of imprisonment. Batista now appeals that sentence, claiming that the District Court erred by granting a two-level enhancement for obstruction of justice, failing to grant a reduction for acceptance of responsibility, failing to grant a downward departure based on significantly reduced mental capacity, and failing to apply the "safety valve" provision of the Sentencing Guidelines. Batista also argues that his sentence was unreasonable under the factors set out in 18 U.S.C. § 3553(a). For the reasons set forth below, we will affirm the District Court's judgment of sentence.

I.

Batista was arrested on September 19, 2002, for his involvement in the sale of approximately 450 grams of crack cocaine.[1] Batista had served as the middle-man during the sale between a confidential informant and the seller, Liroy Batista-Avila. Batista was assisted by Antonio Arias-Campos, who had a minimal role in the sale.

Not long after an unsuccessful proffer session with the government, Batista's attorney requested an evaluation of Batista to determine if he was competent to stand trial. Over the course of the next two years, Batista was evaluated on at least five occasions.

---

[1]As indicated, Batista pled to possessing only 150 grams of crack cocaine.

Batista was initially evaluated by Dr. Susan Barber, who found that Batista was likely not competent to stand trial, and Dr. William Ryan, who initially agreed with Dr. Barber, but suggested that such a finding was possibly the result of malingering by Batista. Dr. Ryan's report indicated that Batista had been administered a test that examined a patient's memory. Patients suffering from severe brain damage could generally answer at least six of the fifteen questions included on the test. Batista answered only two correctly, indicating malingering of memory problems.

Following this report by Dr. Ryan, the government requested further testing to determine if Batista was feigning his symptoms. Dr. Steven Simring interviewed Batista and concluded that Batista was simulating mental illness. His report stated that Batista was "faking or exaggerating psychiatric symptoms in order to avoid going to trial." Dr. Ryan also interviewed Batista again. Based on this second interview, Dr. Ryan concluded that Batista was probably malingering and was competent to stand trial. Dr. Ryan's report noted that Batista "attempted to feign mental illness by refusing to sit in a chair which he claimed was occupied by his imaginary friend, by claiming that he was in his home with his mother waiting upstairs, and by miming the retrieval of an imaginary beverage from an imaginary refrigerator," and then offering Dr. Ryan a sip.

By court order, a final examination was performed by Dr. Joel Morgan, a neuropsychologist who was chosen by Batista. Following his interview with Batista, Dr. Morgan agreed with the previous doctors' conclusions, finding that he was

4

malingering. Dr. Morgan found that the evaluation presented "significant, incontrovertible and overwhelming evidence regarding the presence of suboptimal effort and malingering in the part of the examinee . . . consistent with a picture of what might be phrased as 'unsophisticated malingering.'" Based on all of these examinations, the District Court found Batista competent to stand trial. Following this determination, Batista pleaded guilty to one count of conspiracy to distribute 150 grams or more of crack cocaine.

Batista was sentenced on June 2, 2005. At the time of his sentencing, the government made a motion for a two-level enhancement for obstruction of justice based on Batista's attempts to avoid trial by feigning mental illness. Batista opposed this motion and made his own motion for a reduction in his base offense level based on acceptance of responsibility. In addition to the reports discussed above, the government also offered the testimony of Agent Steven Sutley to support its position. Agent Sutley testified that Arias-Campos told Agent Sutley that Batista had informed him that he would be feigning mental illness to try to avoid standing trial. Agent Sutley also testified that Batista-Avila told him that Batista was purposely not taking his medication to increase his chances of being found incompetent.

Based on this evidence, the District Court expressly found that Batista had feigned mental illness to avoid trial, had transmitted his plan to feign mental incompetence to Arias-Campos, and had chosen to not take his medication so as to increase his chances of being found incompetent. In addition, while the District Court found that Batista had shown some

5

acceptance of responsibility by admitting his guilt and initially trying to cooperate with the authorities, this was counteracted by Batista's later attempts to avoid trial by feigning mental incompetence. Based on these findings, the District Court granted the government's motion for a two-point enhancement for obstruction of justice and denied Batista's motion for a three-level reduction for acceptance of responsibility.[2]

The District Court also denied Batista's motion for a downward departure based on significantly reduced mental capacity, finding that any mental problems Batista may have had did not affect his culpability in the cocaine conspiracy. Therefore, the District Court found that Batista had a base offense level of 36, placing his advisory Guidelines range between 188 and 235 months. The District Court then allowed counsel for both sides to argue for the appropriate sentence based on the § 3553(a) factors. During that time, Batista's counsel focused heavily on the fact that Batista's co-conspirators had received sentences of 63 and 27 months respectively. In its final decision, the District Court found that the disparity between Batista's sentence and those of his co-conspirators was warranted and that a sentence of 188 months was appropriate under the circumstances.

Batista timely filed this appeal.

---

[2]The District Court denied the government's motion for an enhancement based on an aggravating role, finding that Batista was not a leader or organizer. That determination has not been appealed.

## II.

The District Court exercised jurisdiction over this case pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We exercise plenary review over a district court's interpretation of the Guidelines, reviewing its factual determinations for clear error. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). We review a district court's ultimate determination of a sentence for reasonableness. *United States v. Cooper*, 437 F.3d 324, 326-27 (3d Cir. 2006).

## III.

Batista's primary contentions on appeal center on the District Court's determination of his base offense level under the Sentencing Guidelines. We will address each alleged error individually.

## A.

Under the United States Sentencing Guidelines, a district court may enhance a defendant's base offense level by two levels if it determines that the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." U.S. Sentencing Guidelines Manual § 3C1.1. On appeal, Batista argues that the District Court improperly applied this enhancement because Batista was merely "exploring a potential defense or mitigation" when he was being evaluated. However,

the District Court found otherwise, indicating that Batista knowingly feigned mental illness and shared his intent to use this plan with Arias-Campos. We review such factual findings for clear error, *Grier*, 475 F.3d at 570, overturning them only where "'the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)). Here, the District Court's conclusion is supported by ample evidence, including the testimony of Agent Sutley and the reports of three independent doctors who found that Batista was feigning mental illness.

While we have not previously so held, several of our sister circuits have found that a defendant's feigning of mental illness is sufficient grounds for the imposition of the obstruction of justice enhancement pursuant to § 3C1.1. *See United States v. Greer*, 158 F.3d 228, 238-39 (5th Cir. 1998) (finding that obstruction enhancement was proper where defendant feigned mental illness to avoid standing trial); *United States v. Patti*, 337 F.3d 1317, 1325 (11th Cir. 2003) (finding that obstruction enhancement was proper where defendant feigned amnesia, thereby postponing trial for nearly a year). In the case before us, Batista's feigned mental illness required substantial expenditures of both government resources and the District Court's time.

Contrary to Batista's contention, allowing an obstruction of justice enhancement based on feigned mental illness does not chill a defendant's ability to not stand trial if he is mentally incompetent. It is clear that a sentencing enhancement cannot

8

be applied in a way that violates a defendant's constitutional rights. It is equally well-established that the Due Process Clause prevents a defendant from standing trial if that defendant is mentally incompetent. However, these two facts do not combine to prevent the imposition of an enhancement on a defendant who feigns mental illness in order to avoid going to trial. In *United States v. Dunnigan*, 507 U.S. 87 (1993), the Supreme Court rejected similar arguments about an obstruction enhancement based on a defendant's perjured testimony at trial. The Supreme Court found that while the Constitution protects a defendant's right to testify on his own behalf, those protections do not go so far as to protect a defendant's right to perjure himself. *Id.* at 96. Therefore, allowing an enhancement based on perjury did not chill a defendant's constitutional rights.

Based in part on *Dunnigan*, the Fifth Circuit similarly rejected a defendant's claim that allowing obstruction enhancements based on feigned mental incompetence would chill his right to have a competency hearing. "While a criminal defendant possesses a constitutional right to a competency hearing if a bona fide doubt exists as to his competency, he surely does not have the right to create a doubt as to his competency or to increase the chances that he will be found incompetent by feigning mental illness." *Greer*, 158 F.3d at 237. We agree. Further, we find it highly unlikely that a district court would apply an obstruction enhancement as a matter of course when a defendant requested a competency hearing and was later found competent to stand trial. The enhancement would be appropriate only in cases, like that presented here, where the defendant feigns mental illness. Therefore, we find no error in the District Court's application of the enhancement.

9

B.

Batista next contends that the District Court improperly denied his motion for a reduction based on acceptance of responsibility. Section 3E1.1 of the Sentencing Guidelines provides: "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S. Sentencing Guidelines Manual § 3E1.1(a).[3] When reviewing a district court's denial of acceptance of responsibility, we afford the district court "great deference" because "'the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.'" *United States v. Boone*, 279 F.3d 163, 193 (3d Cir. 2002) (quoting U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.5).

Batista rightly argues that the fact that he was given a two-point increase for obstruction of justice did not, *per se*, require the District Court to refuse his acceptance of responsibility motion. As indicated in application note 4 to the acceptance of responsibility Guideline, "[c]onduct resulting in an enhancement under § 3C1.1 . . . ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." *Id*. at § 3E1.1 cmt. n.1. *See also United States v. Jenkins*, 275 F.3d

---

[3]If the defendant's base level is 16 or greater and he has timely entered a guilty plea, the defendant may be eligible for an additional one-level reduction. U.S. Sentencing Guidelines Manual § 3E1.1(b).

10

283, 286 (3d Cir. 2001) (relating district court's choice to increase defendant's base offense level by two levels for obstruction of justice and then reduce the base offense level by three levels for acceptance of responsibility). However, Batista has failed to carry his burden of establishing that the District Court's finding regarding the acceptance of responsibility reduction was "without foundation." *United States v. Salmon*, 944 F.2d 1006, 1128 (3d Cir. 1991).

The District Court appropriately found that Batista had shown some acceptance of responsibility by admitting his guilt and initially trying to cooperate with authorities. However, it also correctly found that this was counteracted by Batista's later attempts to prove that he was not responsible for his actions based on mental incompetence. Batista's actions went beyond the mere exploration or presentation of a defense of mental incompetence to the feigning of a mental illness in an attempt to avoid facing trial or punishment for his crime. Batista's false representation of mental illness was sufficient for the District Court to find that he had not accepted responsibility for his action. Batista's initial admission of guilt is not sufficiently extraordinary to overcome the later behavior that led to the obstruction of justice enhancement. U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.4; *United States v. McDowell*, 888 F.2d 285, 292 n.2 (3d Cir. 1989) (holding that a defendant is not entitled to a reduction of responsibility as a matter of right simply because he pleaded guilty).

As the District Court properly applied the obstruction enhancement and denied the acceptance of responsibility

11

reduction, we find that it properly calculated Batista's base offense level.

## IV.

Batista next contends that the District Court erred in failing to grant him a downward departure for significantly reduced mental capacity pursuant to § 5K2.13. We have previously held that discretionary departures are not reviewable unless the District Court refused such a departure in violation of law. *United States v. McKnight*, 448 F.3d 237, 238 (3d Cir. 2006). Because Batista does not claim that the District Court committed legal error by failing to understand its ability to grant a downward departure, *United States v. Jackson*, 467 F.3d 834, 839 (3d Cir. 2006), but only that the District Court wrongly rejected his arguments in support of his motion for a downward departure, we are without jurisdiction to review his claim.[4]

---

[4]Batista's claim that the District Court erred by not applying the "safety valve" provision of the Sentencing Guidelines, U.S. Sentencing Guidelines Manual § 5C1.2, is spurious. As an initial matter, Batista waived such an argument by conceding that it did not apply at his sentencing hearing. However, even if he had not waived the argument, § 5C1.2 only applies to defendants when their advisory Guidelines range is less than the mandatory minimum required by statute. *Id.* Because Batista's properly calculated Guidelines range was 188 to 235 months, well above the 120-month mandatory minimum under 21 U.S.C. § 841, § 5C1.2 does not apply.

12

V.

Finally, we reject Batista's argument that his sentence was unreasonable. In order to determine whether a district court's imposition of sentence was reasonable, we must first satisfy ourselves that the district court correctly calculated the defendant's base offense level and ruled on any motions for departure. *Cooper*, 437 F.3d at 330. As established by our discussion above, there was no error in the District Court's computation of Batista's base offense level and we may not review its decision not to depart downward.

Once we have satisfied ourselves that a district court has properly determined the advisory Guidelines range, we must next determine whether the district court considered the remaining § 3553(a) factors and applied them appropriately to the defendant's case. *Id.* The question is not what sentence we would have imposed, but whether, under the circumstances cited by the District Court, the sentence imposed was logical and consistent with the § 3553(a) factors. *Id.* (quoting *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005)).

Upon review of the record, we are satisfied that the District Court appropriately considered the remaining § 3553(a) factors. *Id.* The District Court heard Batista's argument that his sentence was inappropriate considering his co-conspirators, Batista-Avila and Arias-Campos, had received sentences of 63 and 27 months respectively. The District Court found that the disparity was warranted as both Arias-Campos and Batista-Avila were operating under cooperation agreements and had benefitted from reductions for substantial assistance and acceptance of

13

responsibility. Batista, on the other hand, had attempted to avoid trial by feigning mental illness.

The District Court also responded to Batista's claim that his history of mental illness should be taken into consideration. The District Court admitted that, the feigning of mental incompetence notwithstanding, Batista did have some history of mental problems, and took that into consideration when determining that he should receive a sentence at the low end of the advisory Guidelines range. While it did not mention each factor included in § 3553(a), we are confident that the District Court took the factors into consideration when making its determination. *Cooper*, 437 F.3d at 329 ("Nor must a court discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing.") (citing *Williams*, 425 F.3d at 480). Therefore, we find that Batista's sentence was reasonable.

VI.

For the reasons stated above, we will affirm the District Court's judgment of sentence.

14