In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-3610

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ANTHONY WILBOURN,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:01-cr-00064-RLM-1 — **Robert L. Miller, Jr.**, *Judge*.

ARGUED JANUARY 27, 2015 — DECIDED FEBRUARY 13, 2015

Before POSNER, SYKES, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant was convicted of
bank robbery by force or violence, in violation of 18 U.S.C.
§ 2113(a), and for brandishing a firearm in furtherance of a
crime of violence, in violation of 18 U.S.C. § 924(c). His ap-
peal presents a question that heretofore this court has had no
occasion to consider—whether a criminal defendant who by
pretending to be mentally incompetent in an effort to delay

or derail his prosecution is guilty of an obstruction of justice within the meaning of section 3C1.1 of the federal sentencing guidelines. That section provides that "if (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels." The district court ruled that the defendant's conduct met the condition for the 2-level enhancement for obstruction of justice. This raised his guidelines range on one of the two counts of conviction from 100 to 120 months at the low end and 125 to 150 months at the high end, and the judge sentenced him on that count to the approximate midpoint of the higher range—135 months.

When Wilbourn was arraigned on the bank robbery and firearm brandishing charges, his lawyer asked the magistrate judge to conduct a hearing to determine whether his client was mentally competent to be tried. Wilbourn suffers from "antisocial personality disorder." Persons afflicted with that condition "tend to antagonize, manipulate or treat others either harshly or with callous indifference. They may often violate the law, landing in frequent trouble, yet they show no guilt or remorse. They may lie, behave violently or impulsively, and have problems with drug and alcohol use." Mayo Clinic, "Diseases and Conditions: Antisocial Personality Disorder," www.mayoclinic.org/diseases-conditions/antisocial-personality-disorder/basics/definition/con-20027920 (visited Feb. 11, 2015). This description fits the defendant to a T. But there is no suggestion that this condition prevented him from understanding the charges against

him or properly assisting in his defense. It is rather because from the time of his arrest he had acted as if he were in a catatonic state that his lawyer doubted his client's competence to stand trial and asked the magistrate judge to determine whether he was competent. The request was granted and as a preliminary to the hearing the defendant was sent to a medical center for an evaluation. He told the psychologist who examined him at the center that he could not read and didn't know what a bank is, what a year is, when his birthday is, or the name or address of any member of his family. When asked what year it was he replied "201" and "1964." But prison staff told the psychologist that they had observed the defendant reading and also that he followed instructions without difficulty. The psychologist concluded that Wilbourn was exaggerating his mental deficits and was competent to stand trial.

At the competence hearing that followed the psychologist's evaluation, the defendant's ex-wife testified on direct examination that the defendant was sometimes aggressive and was difficult to communicate with. But on cross-examination she acknowledged that he could read, drive, and use a cell phone, and that he knew what banks, money, courts, police, and prosecutors are.

The judge determined that the defendant had by exaggerating his mental deficits delayed the criminal proceeding (by how long is unclear, but it was probably four to five months) and thus had obstructed justice. That's the ruling the defendant challenges. He makes two arguments. The first is that it was not he, but his lawyer, who requested the competence hearing. Given the defendant's antisocial personality disorder (and other psychiatric conditions that he

may have, possibly including paranoia and schizophrenia) the request was justifiable, although the lawyer seems to have based it simply on the defendant's refusal to talk about the case with him. That silence may well have been part of the defendant's plan of obstruction—for when the judge found him to be competent and he thus knew that he was going to be tried, he became communicative with his lawyer. Anyway had the defendant not lied to the psychologist she could within minutes have determined that he was indeed competent to stand trial.

The defendant's second argument, which has greater merit, is that if exaggerating one's mental deficits at a competence hearing is deemed obstruction of justice (provided it causes, or is found to have been an attempt to cause, delay or other disruption of the criminal proceeding), defendants and their lawyers will be reluctant to request such a hearing even if they have solid grounds for the request. They will be afraid that the judge, if he decides that the defendant is competent to stand trial after all, will decide that he requested the hearing only to delay or derail the criminal proceeding. But that is just to say that when in doubt about the bona fides of the defendant's behavior at the competence hearing the judge should not find an obstruction of justice. In this case there was no basis for serious doubt that the defendant was deliberately exaggerating his symptoms and by doing so trying to disrupt or at least delay the criminal proceeding, and that he succeeded in delaying his trial by months (though success is not a requirement for imposing an enhancement for obstruction of justice—an attempt will do as well).

Any doubts about the defendant's mental competence are further undermined by the transcript of the sentencing hearing. The defendant made an unusually long statement and it is entirely lucid—in fact anyone reading it would think him not only normal but also rather well educated. Granted, the sentencing hearing took place 12 years after his lawyer moved for a competence hearing. He had first been sentenced as a career offender in 2002, and the transcript of that sentencing hearing is not in the record. His sentence was later vacated and he was resentenced (not as a career offender) with the two-level increase for obstruction of justice that he challenges in this appeal. It is the resentence that is at issue in this appeal. But we don't understand the defendant to be arguing that his mental competence has increased over that 12-year interval.

This is, as we said at the outset, the first case in which our court has confronted the issue of obstructing justice by exaggerating symptoms at a competence hearing. But the only three other federal courts of appeals that have confronted it and issued published opinions have resolved it in the same way as we do in this opinion. See *United States v. Aldawsari*, 740 F.3d 1015, 1021 (5th Cir. 2014); *United States v. Batista*, 483 F.3d 193, 197–98 (3d Cir. 2007); *United States v. Patti*, 337 F.3d 1317, 1325 (11th Cir. 2003).

AFFIRMED.